## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| U.F., *et al.*, | |
| Plaintiffs, | Civil Action No. 19-2164 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

Three plaintiffs, each of whom have children eligible for special education, prevailed against the District of Columbia ("District") in administrative proceedings to vindicate their children's rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1411–19.  *See* Compl. ¶¶ 3, 10, ECF No. 4.[1]  They now seek attorneys' fees and costs, including the costs and expenses of this action, totaling $631,074.77, *see* Pls.' Mot. Summ. J. ("Pls.' Mot.") at 1, ECF No. 11; Pls.' Mem. Supp. Pls.' Mot. ("Pls.' Mem.") at 2, ECF No. 11; *id.*, Ex. 2, ECF No. 11-4 (itemization of plaintiffs' attorneys' fees and costs expended during underlying litigation and to prepare and file pending motion); Pls.' Reply Regarding Summ. J. ("Pls.' Reply") at 1, ECF No. 13; *id.*, Ex. 1, ECF No. 13-1 (itemization of plaintiffs' attorneys' fees and costs expended to prepare and file reply), as well as an award of post-judgment interest to the extent payment by the District is untimely, *see* Pls.' Mem. at 21.  The District, for its part, generally agrees that plaintiffs are entitled to their attorneys' fees and costs, and "disputes only Plaintiffs' requested rate."  Def.'s Opp'n at 1.

---

[1]     The District's answer initially declined to admit the facts in plaintiffs' complaint, *see generally* Answer, ECF No. 8, but now at summary judgment, the District accedes to plaintiffs' factual assertions except those that pertain to the market rate at which attorneys who prevail in bringing claims under the IDEA are compensated, *see generally* Def.'s Opp'n to Pls.' Mot. ("Def.'s Opp'n"), ECF No. 12.

For the reasons that follow, plaintiffs' motion is granted in part and denied in part. Plaintiffs are entitled to compensation at "LSI *Laffey* Matrix" rates and to an award of post-judgment interest at the statutory rate, but must recalculate their fees in accordance with the instructions below.

## I.      BACKGROUND

Attorneys' fees are often awarded based on matrices that set hourly rates for various attorney experience levels.  Here, eschewing the current matrix prepared by the Civil Division of the United States Attorney's Office for the District of Columbia ("USAO") "to evaluate requests for attorney's fees in civil cases in District of Columbia courts," USAO Attorney's Fees Matrix — 2015-2020, Explanatory Note 1, *available at* https://www.justice.gov/usao-dc/page/file/1189846/download, the parties instead dispute which of two so-called "*Laffey* matrices" to apply.  Those matrices are discussed first, followed by an overview of the IDEA proceedings underlying the pending request for attorneys' fees.

### A.      The *Laffey* Matrices

The *Laffey* Matrix "debuted in *Laffey v. Northwest Airlines, Inc.*, [572 F. Supp. 354 (D.D.C. 1983),] a 1983 Title VII and Equal Pay Act case," and was "created . . . by 'inquir[ing] into the billing rates of firms in Washington, D.C., which [were] engaged in active litigation practice in the federal courts' and collecting 'affidavits . . . giving specific rate information, supporting and substantiating the rates described.'"  *DL v. District of Columbia*, 924 F.3d 585, 589 (D.C. Cir. 2019) (second and third alterations and second omission in original) (quoting First Rezneck Aff. ¶ 9, *Laffey v. Nw. Airlines, Inc.*, No. 1:70-cv-021111-AER (D.D.C. Mar. 17, 1983)).  A few years later, the D.C. Circuit "endorsed the *Laffey* matrix in *Save Our Cumberland Mountains, Inc. v. Hodel*, [857 F.2d 1516 (D.C. Cir. 1988) (en banc)]," "suggest[ing] 'the

compiling of a similar schedule of prevailing community rates for other relevant years." *Id.* (quoting *Cumberland Mountains*, 857 F.2d at 1525). "Joseph Yablonski, a Washington, D.C. litigator, answered that call by speaking 'with attorneys from' seven major law firms and comparing the rates he 'found with the rates set forth in two broad-ranging surveys of hourly rates published in the *National Law Journal*,'" resulting in "updated *Laffey*'s rates through 1989." *Id.* (quoting Yablonski Decl. ¶¶ 5–6, *Broderick v. Ruder*, No. 1:86-cv-01834-JHP (D.D.C. 1989)). "Somewhat confusingly, litigants routinely refer to both the original 1983 matrix and Yablonski's 1989 update as the '*Laffey* matrix.'" *Id.*

Since the *Laffey* Matrix was originally "[c]reated in the 1980s," *id.* at 587, courts today must determine "how best to update the *Laffey* matrix for inflation," *id.* at 589. Over the years, litigants have proposed "using an assortment of tools" to bring the *Laffey* rates up to date. *Id.* at 587. This has resulted in competing versions of the *Laffey* Matrix. *Id.* at 589.

Plaintiffs here urge application of the "LSI *Laffey* Matrix," which was "first approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000)." *Eley v. District of Columbia* (*Eley II*), 201 F. Supp. 3d 150, 154 n.1 (D.D.C. 2016). This is "a version of the 1989 *Laffey* data updated with a . . . Bureau of Labor Statistics index called the Legal Services Index (LSI), which estimates price increases for the legal market nationwide." *DL*, 924 F.3d at 589–90. By contrast, the District proposes use of an alternative version of the *Laffey* Matrix that, until 2015, was prepared annually by the USAO based on "the original 1983 base data updated through a Bureau of Labor Statistics inflation index that tracks regional price increases in all goods." *Id.* at 589. Despite abandonment of this methodology by the USAO, the District does not propose an

alternative to continuance of the term "USAO *Laffey* Matrix," which is now a misnomer.  *See* Def.'s Opp'n at 4 & n.1; Def.'s Ex. 2, ECF No. 12-2 (2003-2014 USAO *Laffey* Matrix).[2]

The LSI rises "more rapidly" than the inflation index used to update the USAO *Laffey* Matrix, *Eley II*, 201 F. Supp. 3d at 154 n.1, resulting in higher hourly rates that many view as better "captur[ing] the true rate of inflationary change," *DL*, 924 F.3d at 589.  Since the USAO stopped updating the USAO *Laffey* Matrix in 2015, here the District performed its own calculations to generate current USAO *Laffey* rates.  *See* Def.'s Opp'n at 4 n.1.

### B.    The Underlying Proceedings

In 2016 and 2017, Plaintiffs U.F., A.R., and J.T. brought administrative due process complaints alleging that the District denied their children free appropriate public educations under the IDEA.  Compl. ¶ 10; Pls.' Mot., Ex. 1 (Hearing Officer Determinations), ECF No. 11-3.  U.F. and A.R. each instituted a single action, while J.T. initiated two.  *See* Pls.' Mem. at 22; Pls.' Mot., Ex. 1.  In every case, a hearing officer conducted a due process hearing and issued a determination.  *See generally* Pls.' Mot., Ex. 1.  Plaintiffs prevailed in all four proceedings, receiving final relief.  *See* Compl. ¶ 10; Pls.' Mot., Ex. 1.

Plaintiffs then initiated the present suit for attorneys' fees and costs, and now move for summary judgment.  After the completion of briefing, on May 15, 2020, *see* Pls.' Reply, this motion is ripe for resolution.

---

[2]    The USAO stopped using the so-called USAO *Laffey* Matrix in 2015.  *DL*, 924 F.3d at 590.  Now the USAO propounds a matrix that "no longer bears any methodological connection to *Laffey* the case or *Laffey* the fee matrix."  *Jones v. District of Columbia*, No. 15-cv-01505 (BAH), 2019 WL 652349, at *9 (D.D.C. Feb. 15, 2019). To create the current USAO Attorney's Fees Matrix, the USAO "derives the hourly rates for attorneys in this area based on 'average hourly rates reported in 2011 survey data for the D.C. Metropolitan area, which rates [are] adjusted for inflation with the Producer Price Index-Office of Lawyers (PPI-OL) index.'"  *Id.* at *8 (quoting USAO Attorney's Fees Matrix — 2015-2019, Explanatory Note 2, *available at* https://www.justice.gov/usao-dc/file/796471/download).

## II.    LEGAL STANDARD

The IDEA provides that "the court, in its discretion may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i).  Attorneys' fees under the IDEA are not limited to time spent in, and preparing for, adversarial proceedings alone.  "Rather, an attorney can recover for work when there is 'a clear showing that the time was expended in pursuit of a successful resolution of the case in which fees are being claimed.'" *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 735 F. App'x 733, 736 (D.C. Cir. 2018) (per curiam) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1335 (D.C. Cir. 1982) (per curiam)).

Although the "IDEA provides relatively little guidance to either the courts or litigants regarding how, precisely, these 'reasonable attorneys' fees' are to be calculated," *Reed v. District of Columbia*, 843 F.3d 517, 520 (D.C. Cir. 2016), the statute requires that such fees be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished," 20 U.S.C. § 1415(i)(3)(C), and disallows any "bonus or multiplier," *id.*  In addition, the statute authorizes "courts to reduce awards of attorneys' fees if they 'unreasonably exceed[] the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience.'" *Reed*, 843 F.3d at 520 (alteration in original) (quoting 20 U.S.C. § 1415(i)(3)(F)(ii)).

In applying a statutory fee-shifting provision allowing recovery of reasonable attorneys' fees, the "guiding light" is "the lodestar method [which] produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550–51 (2010) (emphasis in original).  The lodestar approach

5

applies in IDEA cases using a "two-part framework that takes into account: (1) the 'number of hours reasonably expended in litigation'; and (2) the 'reasonable hourly rate' for the services provided." *Reed*, 843 F.3d at 520 (quoting *Eley v. District of Columbia* (*Eley I*), 793 F.3d 97, 100 (D.C. Cir. 2015)).  To meet the first part of this framework, "fee applicants must document the hours spent litigating in IDEA proceedings in which they prevailed."  *Id.*

For the second part of the framework, the D.C. Circuit instructs that the appropriate "reasonable hourly rate" may be determined upon consideration of three sub-elements: "(1) 'the attorney['s] billing practices,' (2) 'the attorney['s] skills, experience, and reputation' and (3) 'the prevailing market rates in the relevant community.'"  *Id.* at 521 (alterations in original) (quoting *Eley I*, 793 F.3d at 100).  The third sub-element regarding the prevailing market rate may be addressed by fee applicants in IDEA cases by relying "on two separate, but inter-related, approaches": (1) "attempting to demonstrate that IDEA cases fall within the bounds of th[e] type of litigation" that uses the "*Laffey* Matrix," which the D.C. Circuit has characterized as "apply[ing] only to 'complex federal litigation,'"; and (2) "providing evidence of the fees charged, and received, by IDEA litigators."  *Id.*

When the *Laffey* Matrix applies, a court must further determine "how best to update the *Laffey* matrix for inflation," *DL*, 924 F.3d at 589, which is usually done by choosing a version of the *Laffey* Matrix to apply.  To bolster their position as to which version to apply, the parties "may point to additional evidence" in support of their proposed rates, "which can include 'surveys to update the matrix; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases.'"  *Id.* (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109

(D.C. Cir. 1995)).  "No particular type of evidence can be considered gospel; 'evidence of the

prevailing market rate can take many forms.'"  *Id.* (quoting *Eley I*, 793 F.3d at 104 n.5).

Initially, "[t]he 'fee applicant bears the burden of establishing entitlement to an award,

documenting the appropriate hours, and justifying the reasonableness of the rates.'"  *Eley I*, 793

F.3d at 100 (quoting *Covington*, 57 F.3d at 1107).  Once an applicant meets this burden, a

presumption applies that the number of hours billed and the hourly rates are reasonable.

*Covington*, 57 F.3d at 1109.  At that point, the burden shifts to the opposing party to "provide

specific contrary evidence tending to show that a lower rate would be appropriate."  *Id.* at 1110

(quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326).

## III.    DISCUSSION

The District does not dispute that each plaintiff in this suit is "a prevailing party who is

the parent of a child with a disability," 20 U.S.C. § 1415(i)(3)(B)(i)(I), and, as such, is generally

entitled to reimbursement of reasonable attorneys' fees and costs under the IDEA, *see* Def.'s

Opp'n at 1.  Nor does the District dispute any of the charges submitted by plaintiffs' counsel, or

their billing practices.  *See id.*  The District *does* challenge plaintiffs' requested rate, *see id.*, but

even in this regard, the disagreement between plaintiffs and the District is narrow, as the District

raises no dispute over the underlying proceedings constituting "complex federal litigation" for

which the *Laffey* Matrix may be used to determine the appropriate hourly rate.  *See id.* at 4; Pls.'

Reply at 2.[3]  Thus, the key issue is *which* version of the *Laffey* Matrix to apply: the "LSI *Laffey*

---

[3]         Fee applicants "are entitled to [a] *Laffey* rate only if they can establish that the 'relevant legal market . . . is
subject to the same hourly rates that prevail in . . . complex federal litigation.'"  *Price v. District of Columbia*, 792
F.3d 112, 117 (D.C. Cir. 2015) (Brown, J, concurring) (second omission in original) (quoting *Laffey*, 572 F. Supp. at
374).  As a result, "hourly rate disputes in this circuit often revolve[] around whether a case [is] sufficiently complex
to warrant *Laffey* rates."  *DL*, 924 F.3d at 589; *see also, e.g.*, *Reed*, 843 F.3d at 521 ("Because the *Laffey* Matrix and
subsequent revisions to this matrix apply only to 'complex federal litigation,' fee applicants have focused their
efforts on attempting to demonstrate that IDEA cases fall within the bounds of this type of litigation."); *Eley I*, 793
F.3d at 105 (declining to "decide today whether IDEA litigation is in fact sufficiently 'complex' to use [a] version of
the *Laffey* Matrix").  Such disputes arise most often when, as here, the underlying IDEA proceedings took place

Matrix" requested by plaintiffs, *see* Pls.' Mem. at 2, or the "USAO *Laffey* Matrix," which the

USAO no longer propounds but the District nevertheless has updated and maintains is

appropriate, *see* Def.'s Mem. at 4 & n.1.

As noted, when considering the reasonableness of an attorney's proposed hourly rate for

reimbursement for work invoiced in an IDEA case, the D.C. Circuit has instructed examination

of "(1) 'the attorney['s] billing practices,' (2) 'the attorney['s] skill, experience, and reputation'

and (3) 'the prevailing market rates in the relevant community.'" *Eley I*, 793 F.3d at 100

(alterations in original) (quoting *Covington*, 57 F.3d at 1107; *see also Reed*, 843 F.3d at 521

(citing three sub-elements). These three sub-elements are examined first, with the first and

second sub-elements discussed together. Then, the need to adjust plaintiffs' proposed award to

account for their attorneys' levels of experience is addressed, and finally plaintiffs' request for

post-judgment interest is considered.

### A.    The LSI *Laffey* Matrix Provides the Reasonable Hourly Rate

#### 1.    *First and Second Sub-elements: Attorney's Billing Practices and Experience*

The first sub-element for establishing a reasonable hourly rate requires the applicant to

show the rates that her attorney "customarily charges clients." *Covington*, 57 F.3d at 1103; *see*

*also Lee v. District of Columbia*, 298 F. Supp. 3d 4, 11 (D.D.C. 2018) (noting that this "factor

---

before an administrative body rather than in federal court. *See DL*, 924 F.3d at 594 ("[W]e have held that IDEA cases sometimes fall within a submarket characterized by below-*Laffey* rates. But such cases involved individual IDEA plaintiffs litigating non-complex cases primarily before an administrative body." (emphasis and citation omitted)). In this instance, however, no dispute over complexity exists, for both parties agree that some version of the *Laffey* Matrix should apply. *See* Def.'s Opp'n at 4; Pls.' Reply at 2; *see also Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015) (determining that the District "acquiesce[ed] in the notion that the litigation at issue qualifies as complex federal litigation" when it "[did] not argue for rates lower than both of the *Laffey* matrices, but instead argue[d] that one *Laffey* Matrix should apply instead of the other"). "As the District concedes that the relevant market is that of complex federal litigation, the only issue is whether Plaintiffs submitted sufficient evidence . . . to conclude that the LSI [version of the] *Laffey* Matrix applies." *Salazar*, 809 F.3d at 64; *see also DL*, 924 F.3d at 594 (accepting that the case qualified as "complex federal litigation" when the District did not challenge that district court finding).

requires the applicant to show her attorney's 'custom' with respect to billing in IDEA cases").

Plaintiffs' counsel state in their affidavits that they have "always exclusively charged at hourly

rates matching those in what is commonly known as 'the LSI Laffey Matrix.'"  Pls.' Mot., Ex. 4

(Verified Statement of Douglas Tyrka ("Tyrka Decl.")) ¶ 8, ECF No. 11-6; *see also id.*, Ex. 5

(Verified Statement of Nicholas Ostrem ("Ostrem Decl.")) ¶ 7, ECF No. 11-7 (same).  The D.C.

Circuit has opined that "an attorney's usual billing rate is presumptively the reasonable rate,

provided that this rate is 'in line with those prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience, and reputation,'" *Kattan by Thomas v.*

*District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum v. Stenson*, 465 U.S.

894, 895–96 n.11 (1984)); *see also Baylor*, 735 F. App'x at 735 (noting that "the District Court

appropriately relied on this Court's holding that an attorney's usual billing rate is presumptively

the reasonable rate" (internal quotation marks omitted)), which is the case here, as discussed

*infra* in Part III.A.2.  Thus, this first sub-element favors using the LSI *Laffey* Matrix as the

prevailing market rate.

      To meet the second sub-element, plaintiffs' attorneys' affidavits describe the attorneys'

significant skill and experience both in litigating to protect children's rights generally and under

the IDEA, in particular.  Starting with plaintiffs' counsel Douglas Tyrka, Mr. Tyrka estimates

that, over the past two decades, he has "litigated over 1000 IDEA administrative cases and over

50 IDEA federal cases," winning "private school placement . . . for more than 100 children."

Tyrka Decl. ¶ 14.  In 2005, for instance, Mr. Tyrka reports that he and his then-partner

"represented the students in approximately 10% of all administrative IDEA cases in the District."

*Id.* ¶ 37.  Further, Mr. Tyrka "often advise[s] other parent attorneys," and is "regularly ask[ed]"

by "[o]ther IDEA attorneys" "to take IDEA cases from them to the federal courts."  *Id.* ¶ 15.

Plaintiffs' counsel Nicholas Ostrem is also highly experienced.  He attests that, over the past eleven years, he has "litigated or assisted in litigating over 100 special education cases in the District of Columbia, including administrative cases and federal cases."  Ostrem Decl. ¶ 10.  He has "represented more than 200 clients during this time, regarding more than 300 students."  *Id.*  He also is the "current and former Co-Chair of the District of Columbia Special Education Attorney Roundtable," has "served as an Independent Hearing Officer in mock proceedings for the Special Education Law Clinic at the University of the District of Columbia School of Law," and has "served as a panel member/presenter" at fora and trainings on the subject of "special education issues in the District of Columbia."  *Id.*  ¶ 11.  In sum, plaintiffs' attorneys have demonstrated their skills and experience over the course of long careers dedicated to serving the needs of children.

Therefore, as to the first two sub-elements, plaintiffs have shown their entitlement to fees reimbursed at the rates provided in the LSI *Laffey* Matrix.  Notably, the District raises no challenge as to plaintiffs' counsels' representations regarding, or satisfaction of, either of the first two sub-elements in establishing a reasonable hourly rate.  *See generally* Def.'s Opp'n.

### 2.  *Third Sub-Element: Prevailing Market Rates in the Relevant Community*

The parties' disagreement is focused on whether the "LSI *Laffey* Matrix" rates or the "USAO *Laffey* Matrix" rates reflect the prevailing market rate applicable to this IDEA case.  Plaintiffs bear the initial burden of justifying the reasonableness of their proposed rates and, consequently, the LSI *Laffey* Matrix is considered first.

### a.  **Plaintiffs Have Justified the Reasonableness of the LSI *Laffey* Matrix**

Plaintiffs present two primary types of evidence in support of application of the LSI *Laffey* Matrix.  First, plaintiffs submit a declaration from Dr. Michael Kavanaugh, who

developed the LSI *Laffey* Matrix.  *See* Pls.' Mot., Ex. 10 (Declaration of Dr. Michael

Kavanaugh), ECF No. 11-12.  This declaration both explains Dr. Kavanaugh's methodology, *see*

*id.* ¶¶ 3, 7, 9–10, and points to cases in which courts have adopted his analysis, *see id.* ¶ 4.

Notably, declarations from Dr. Kavanaugh have twice served as key evidence in cases in which

the D.C. Circuit upheld application of the LSI *Laffey* Matrix.  *See Salazar*, 809 F.3d at 64–65

("Plaintiffs submitted evidence for their preferred *Laffey* Matrix update, including the affidavit of

the economist that developed the LSI *Laffey* Matrix—Dr. Michael Kavanaugh.  Dr. Kavanaugh's

affidavit explained why the LSI is a better measure of the change in prices for legal services in

Washington, D.C. than the USAO update to the *Laffey* Matrix.  The affidavit also noted other

federal courts that have adopted the LSI *Laffey* Matrix."); *DL*, 924 F.3d at 591 (determining that

plaintiffs provided "more than enough to pass the burden onto the District" by supplying "the

same types of evidence" as in *Salazar*).  Indeed, in *Salazar*, the D.C. Circuit determined that the

district court did not err in concluding, based in part on Dr. Kavanaugh's declaration, that "the

LSI-adjusted matrix is probably a *conservative* estimate of the actual cost of legal services in [the

District of Columbia]."  *Salazar*, 809 F.3d at 65 (emphasis in original) (internal quotation marks

omitted) (quoting *Salazar v. District of Columbia*, 991 F. Supp. 2d 39, 48 (D.D.C. 2014)).

Second, plaintiffs offer "evidence of recent fees awarded by the courts."  *DL*, 924 F.3d at

589 (quoting *Covington*, 57 F.3d at 1109); *see* Pls.' Mem. at 10.  Such evidence is highly

probative, for D.C. Circuit precedent suggests that "IDEA cases [are] a class of litigation to

which common hourly fee rates will generally apply."  *Eley II*, 201 F. Supp. 3d at 158–59 (citing

*Eley I*, 793 F.3d at 105; *Salazar*, 809 F.3d at 63–65).  This Court has thus observed that fees

awarded by the courts "play[] a significant *de facto* role in establishing the customary,

'prevailing' rate for IDEA cases."  *Jones*, 2019 WL 652349, at *12.

Here, recent fee awards strongly support use of the LSI *Laffey* Matrix.  As the D.C. Circuit observed just last year, when the LSI *Laffey* Matrix and the USAO *Laffey* Matrix have been "pitted against each other," courts have "frequently found the LSI *Laffey* matrix more persuasive."  *DL*, 924 F.3d at 590.  Moreover, the D.C. Circuit itself has upheld the application of LSI *Laffey* Matrix in every IDEA attorneys' fees case in which the relevant IDEA proceedings constituted complex federal litigation.  *See DL*, 924 F.3d at 594; *Salazar*, 809 F.3d at 65.[4]  In the light of these D.C. Circuit decisions, at least one judge of this Court has concluded that so long as the relevant proceeding is complex federal litigation—the category into which the District concedes the present case falls, *see supra* note 3—"the applicable matrix . . . in D.C. is the LSI Laffey Matrix."  *Feld v. Fireman's Fund Ins. Co.*, No. 12-cv-1789 (JDB), 2020 WL 1140673, at *6 (D.D.C. Mar. 9, 2020); *see also Mattachine Soc'y of Washington, DC v. U.S. Dep't of Justice*, 406 F. Supp. 3d 64, 71 (D.D.C. 2019) (choosing the LSI *Laffey* Matrix "largely based upon" *DL*).  Thus, plaintiffs have established the reasonableness of their proposed LSI *Laffey* Matrix rates.

### b.  The District Has Not Shown That a Lower Rate Would Be Appropriate

The burden now shifts to the District to "provide specific contrary evidence tending to show that a lower rate would be appropriate."  *Covington*, 57 F.3d at 1110 (quoting *Nat'l Ass'n*

---

[4]       Different Circuit panels vacated this Court's use of the LSI *Laffey* Matrix in *Eley I*, *see* 793 F.3d at 103, 105, and upheld a district court's application of 75% of the USAO *Laffey* rates in *Reed*, *see* 843 F.3d at 523, 525, after determining that in those IDEA cases the plaintiffs had not "demonstrat[ed]" that the relevant IDEA proceedings were "in fact sufficiently 'complex' to use either version of the *Laffey* Matrix," *Eley I*, 793 F.3d at 105 (rejecting sufficiency of a declaration from Dr. Kavanaugh and the verified statement of Douglas Tyrka, a plaintiffs' counsel in this case, averring that he charged his paying clients the rates in the LSI *Laffey* Matrix, where the plaintiff failed to "demonstrat[e] that IDEA litigation is as complex as the type of litigation that supports the 'enhanced' hourly rates in the LSI *Laffey* Matrix"); *see Reed*, 843 F.3d at 525–26 ("Appellants failed to meet their burden of demonstrating that IDEA cases are akin to the type of cases traditionally understood to fall within the category of 'complex federal litigation' to which the *Laffey* Matrix presumptively applies.").  No such issue is presented in this case.  *See supra* note 3.

*of Concerned Veterans*, 675 F.2d at 1326).  The District, however, provides little support for application of the USAO *Laffey* rates.

   To start, the District hardly bothers to point to relevant case law.  It cites only one recent case that applied the USAO *Laffey* rates, *see* Def.'s Opp'n at 3 (citing *Joaquin v. District of Columbia*, 210 F. Supp. 3d 64, 74 (D.D.C. 2016)), and that case, from 2016, predates *DL*, which provides strong support for application of the LSI *Laffey* Matrix in IDEA cases going forward, *see DL*, 924 F.3d at 590.[5]  Nor does the District make any effort to rebut plaintiffs' "affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases," *DL*, 924 F.3d at 589 (quoting *Covington*, 57 F.3d at 1109), in which a number of IDEA attorneys in this jurisdiction report that they charge rates higher than those in the USAO *Laffey* Matrix, *see* Pls.' Mot., Ex. 6 (Declaration of Charles A. Moran, Esq.) ¶¶ 5–10, ECF No. 11-8; *id.*, Ex. 7 (Declaration of Stevie Nabors, Esq.) ¶¶ 3–8, ECF No. 11-9; *id.*, Ex. 8 (Declaration of Carolyn Houck, Esq.) ¶ 3, ECF No. 11-10; *id.* (Declaration of Elizabeth T. Jester, Esq.) ¶ 12.  Most glaringly, the District does not address that the District *itself* has recently settled IDEA attorneys' fees cases with plaintiffs' attorneys at rates that exceeded those in the USAO *Laffey* Matrix.  *See* Tyrka Decl. ¶¶ 10–12; Ostrem Decl. ¶ 8; *see also DL*, 924 F.3d at 589 (explaining that a party may establish prevailing market rates by pointing to "evidence of recent fees awarded . . . through settlement" (quoting *Covington*, 57 F.3d at 1109)).

   The dearth of evidence provided by the District is in stark contrast to what it offered in *Eley II*, the last time this Court was asked to choose between the LSI *Laffey* and USAO *Laffey* rates.  *See* 201 F. Supp. 3d at 161.  There, the District submitted "a chart reflecting 132 fee awards in this jurisdiction between April 2010 and July 2015," which fee awards, "[t]aken

---

[5]      The District also briefly cites *Eley I*, but that case is inapposite for the reasons explained above.  *See supra* note 4.

together, . . . suggest[ed] that, in the specific context of IDEA litigation, prevailing plaintiffs are most frequently reimbursed at or just below the rates set out in the USAO *Laffey* Matrix." *Id.* at 163. The District makes no similar effort here, perhaps because it cannot do so. After all, in the past five years, the USAO *Laffey* Matrix has been (1) abandoned by the USAO itself, *DL*, 924 F.3d at 590, and (2) frequently discarded in favor of the LSI *Laffey* Matrix by judges in this jurisdiction, as already noted, *see, e.g. id.*; *Salazar*, 809 F.3d at 65. Even if, however, the District could have made such a showing, what matters is that it has not done so here.

* * *

Plaintiffs have justified the reasonableness of their proposed rates, and the District has failed to provide specific contrary evidence that a lower rate would be appropriate. Accordingly, plaintiffs are entitled to reimbursement at the LSI *Laffey* Matrix rates.[6]

## B.     Plaintiffs' Proposed Award Must Be Adjusted to Account for Their Attorneys' Levels of Experience

Although plaintiffs are entitled to attorneys' fees derived from the LSI *Laffey* Matrix, neither side addresses whether those rates apply uniformly to all the hours billed, or rather must be applied based on each attorney's level of experience at the time he performed work on plaintiffs' behalf. Relevant precedent supports using the experience levels of the attorneys at the time the work was performed, *see, e.g.*, *Eley II*, 201 F. Supp. 3d at 164; *James v. District of Columbia*, 302 F. Supp. 3d 213, 229 n.8 (D.D.C. 2018); *Young v. Sarles*, 197 F. Supp. 3d 38, 52

---

[6]     Plaintiffs requested, in the alternative, that they be reimbursed at the rates in the current USAO Matrix. *See* Pls.' Mem. at 16–18; Pls.' Reply at 4–5. The D.C. Circuit, however, has sharply criticized this Matrix, explaining that "rates for legal services in the District of Columbia are among the highest anywhere," yet "more than half the data in the USAO's customized dataset comes from outside the District of Columbia." *DL*, 924 F.3d at 592. In any event, plaintiffs have established their entitlement to compensation at the higher, LSI *Laffey* rates, so the appropriateness of awarding rates derived from the current USAO Matrix need not be addressed.

(D.D.C. 2016); *West v. Potter*, No. 05-CV-01339 (BJR), 2014 WL 12619780, at *2 (D.D.C. Mar. 24, 2014), and that approach will be employed here.[7]

Attorney Douglas Tyrka graduated with a juris doctor in 1998 and has been practicing continuously since then.  *See* Tyrka Decl. ¶ 14.  He progressed from the "11-19" years category to the "20+" category in the current LSI *Laffey* Matrix in 2017.  *See* LSI *Laffey* Matrix, http://www.laffeymatrix.com/see.html.  Thus, plaintiffs can only be reimbursed at an hourly rate of $747 for hours Douglas Tyrka billed before June 1, 2017 (the date provided in the LSI *Laffey* Matrix for calculating an attorneys' level of experience), but can recover an hourly rate of $899 for hours billed on or after that date.  *See id.* & n.*.

Attorney Nicholas Ostrem received his law degree in 2008 and has also been continuously in practice.  *See* Ostrem Decl. ¶ 10.  On June 1, 2018, he graduated from the "8-10" category to the "11-19" category.  Thus, for Ostrem's work before June 1, 2018, an hourly rate of $661 applies, and for work on or after June 1, 2018, plaintiffs may claim $747 per hour for Ostrem's efforts.  *See* LSI *Laffey* Matrix & n.*.

The itemized fees submitted by plaintiffs do not account for these shifts in levels of experience during the relevant time period.  *See* Pl.'s Mot., Ex. 2.  Accordingly, plaintiffs must recalculate their fees before receiving a final grant of summary judgment in their favor.

---

[7]      The issue of whether plaintiffs' fees should reflect their attorneys' levels of experience at the time the attorneys' services were rendered is distinct from the issue of whether plaintiffs should be compensated based on the current LSI *Laffey* rates or those in effect when the underlying administrative proceedings were litigated.  The latter issue addresses the fact that the LSI *Laffey* Matrix "is revised annually to reflect changes in the cost of legal services in the District."  *Eley II*, 201 F. Supp. 3d at 163 n.8.  In the instant case, plaintiffs ask to be awarded current hourly rates, Pl.'s Mem. at 20, and the District has not objected, *see generally* Def.'s Opp'n.  Therefore, plaintiffs are entitled to compensation at the most recent rates in the LSI *Laffey* Matrix.

**C.     An Award of Post-Judgment Interest Is Necessary to Ensure Timely Payment**

Finally, plaintiffs ask for an "order that the District pay an additional $5,000.00 for each delay of a month or part thereof in payment."  Pls.' Mem. at 21.  In support of their request, they point out that the District has a "long history of ignoring the timelines in orders for payment of IDEA attorneys' fees."  *Id.* (citing *Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 245–46 (D.D.C. 2012)); *see also* Tyrka Decl. ¶ 34 ("In 13 cases, I have had to file for contempt or threaten to do so after months of failure by the District to comply with fee orders won in litigation.").  Further, they observe that an award of post-judgment interest is not without precedent.  *See* Pls.' Mem. at 21 (citing *Cook v. District of Columbia*, 115 F. Supp. 3d 98, 107 (D.D.C. 2015)).[8]

Plaintiffs are correct that the District's poor payment track record calls for imposition of post-judgment interest.  Indeed, this Court has characterized the District's history of refusing full and timely payments of attorneys' fees as "disgraceful."  *Thomas*, 908 F. Supp. 2d at 246.  Moreover, the District here did not even bother to respond to the charge that it routinely delays attorneys' fees payments in IDEA cases.  *See generally* Def.'s Opp'n.  At the same time, however, plaintiffs ask for too much by requesting $5,000 for each month of delayed payment, for they "do[] not cite any example of a court in this Circuit ordering such a severe penalty at this stage of litigation."  *Brown v. District of Columbia*, 80 F. Supp. 3d 90, 102 (D.D.C. 2015) (refusing to impose penalty of $2,000 per month).  "Instead, the Court will award post-judgment interest pursuant to 28 U.S.C. § 1961(a)," *id.*, which sets a statutory rate for interest on "any

---

[8]        Relatedly, plaintiffs request reimbursement of the fees and costs required to pursue this action for attorneys' fees.  *See* Pls.' Mot. at 1; Pls.' Reply at 1.  The District has not objected to plaintiffs' request, *see generally* Def.'s Opp'n, which is granted, *see Jones*, 2019 WL 652349, at *16 (awarding attorneys' fees incurred to recover attorneys' fees).

money judgment in a civil case recovered in a district court," 28 U.S.C. § 1961(a) (providing that "interest shall be calculated from the date of the entry of the judgment"); *see also Allen v. District of Columbia*, No. 18-7177, 2020 WL 4590426, at *3 (D.C. Cir. Aug. 11, 2020) (explaining that "'any money judgment' includes an award of attorneys' fees").[9]

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is granted in part and denied in part.  Having met their burden of demonstrating that rates provided by the LSI *Laffey* Matrix are in line with the prevailing market rates for the services they received in connection with their successful IDEA proceedings, plaintiffs are entitled to reimbursement based on that matrix, including for the hours their attorneys expended in connection with this effort.  Further, in light of the delay in payment, plaintiffs are entitled to reimbursement at rates provided by the current version of that matrix, plus interest at the statutory rate if payment is further delayed after a final order is entered.  Plaintiffs' award, however, must be based upon their attorneys' levels of experience during the relevant periods of litigation.  To that end, plaintiffs are ordered to submit promptly new fee and cost award calculations in accordance with the aforementioned instructions, with a brief opportunity for the District to review those new calculations, before summary judgment is granted to plaintiffs in full.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: August 12, 2020

_____
BERYL A. HOWELL
Chief Judge

---

[9]     The D.C. Circuit recently, in *Allen*, held that the District does not owe interest under 28 U.S.C. § 1961(a) to parents who prevailed against the District in IDEA proceedings brought before March 11, 2009.  *See* 2020 WL 4590426, at *1–3.  That decision, however, turned on the fact that a 2009 law prevents the District from paying attorneys' fees in excess of $4,000 for any IDEA proceeding initiated before the 2009 law's enactment.  *See id.* at *2 (citing Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, § 814(a)(1), 123 Stat. 524, 697).  No such cap applies to the IDEA proceedings at issue, which occurred in 2016 and 2017.  *See* Compl. ¶ 10; Pls.' Mot., Ex. 1. Accordingly, *Allen* presents no obstacle to an award of post-judgment interest here.